MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

MIRIAM MENDEZ, CAROLINA LIZBETH
GAVILANES CORTAZA, and MARCO
CRUZ, *individually and on behalf of others
similarly situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| *Plaintiffs,* | **COLLECTIVE ACTION UNDER**<br>**29 U.S.C. § 216(b)** |
| -against- | **ECF Case** |

K & Y PEACE CORP. (d/b/a BLACKSMITH
CAFE) SUN MI CHI, and KYUNG H. SONG,

*Defendants.*
-------------------------------------------------------X

Plaintiffs Miriam Mendez, Carolina Lizbeth Gavilanes Cortaza, and Marco Cruz,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Defendants K & Y Peace Corp. (d/b/a Blacksmith Cafe), Sun Mi Chi and Kyung H. Song

(collectively, "Defendants"), allege as follows:

### NATURE OF THE ACTION

1.     Plaintiffs were employees of K & Y Peace Corp. Sun Mi Chi and Kyung H. Song.

2.     Defendants own, operate, and/or control a restaurant located at 20 West 37th

Street, New York, New York 10018, under the name "Blacksmith Cafe."

3.     Upon information and belief, Defendants Sun Mi Chi and Kyung H. Song serve or served as owners, managers, principals or agents of Defendant K & Y Peace Corp.("Defendant Corporation"), and, upon information and belief, through this corporate entity, operates or operated the restaurant known as "Blacksmith Cafe" as a joint or unified enterprise.

4.     Plaintiffs were employed by Defendants as cashiers, general assistants, porters and cooks.

5.     Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation required by federal and state law and regulations.

6.     Defendants failed to maintain accurate recordkeeping of their hours worked, and failed to pay Plaintiffs appropriately for any hours worked either below or over 40 in a week.

7.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours.

8.     Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

9.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage or the overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and the "spread of hours" and overtime wage

- 2 -

orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6(a) (2009) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

11.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 29 U.S.C. §§ 201 *et seq.* (FLSA); and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants maintain their headquarters and offices within this district, and Defendants operate a restaurant located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

14.     Plaintiffs consent to being party plaintiffs pursuant to 29 U.S.C. 216(b), and bring these claims, based upon the allegations herein, as representative parties of a prospective class of similarly situated individuals under 29 U.S.C. 216(b).

### *Plaintiff Miriam Mendez*

15.     Plaintiff Miriam Mendez ("Plaintiff Mendez" or "Ms. Mendez") is an adult individual residing in queens County, New York.

16.     Plaintiff Mendez was employed by Defendants from approximately July 2015 until on or about April 28, 2016.

17.     Plaintiff Carolina Lizbeth Gavilanes Cortaza ("Plaintiff Gavilanes" or "Ms. Gavilanes") is an adult individual residing in Bronx County, New York.

18.     Ms. Gavilanes was employed by Defendants from approximately August 24, 2015 until on or about April 24, 2016.

### *Plaintiff Marco Cruz*

19.     Plaintiff Marco Cruz ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in Queens County, New York.

20.     Mr. Cruz was employed by Defendants from approximately August 2012 until on or about July 10, 2015.

### *Defendants*

21.     At all times relevant to this Complaint, Defendants owned, operated, and/or controlled a restaurant located at 20 W. 37th Street, New York, New York 10018, under the name "Blacksmith Cafe".

22.     Upon information and belief, K & Y Peace Corp., (Defendant Corporation) is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 20 W. 37th Street, New York, New York 10018.

23.     Defendant Sun Mi Chi ("Defendant Sun Mi Chi") is an individual engaging in business in this judicial district during the relevant time period. Defendant Sun Mi Chi is sued individually in her capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

- 4 -

24.     Upon information and belief, Defendant Sun Mi Chi possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation. She determined the wages and compensation of the Defendants' employees, including Plaintiffs, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

25.     Defendant Kyung H. Song ("Defendant Kyung H. Song") is an individual engaging in business in this judicial district during the relevant time period. Defendant Kyung H. Song is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

26.     Upon information and belief, Defendant Kyung H. Song possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.  He determined the wages and compensation of the Defendants' employees, including Plaintiffs, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

27.     As alleged above, Defendants operate(d) a restaurant located in the Flat Iron section of Manhattan.

28.     Defendants maintain(ed) as their principal place of business a centralized office which is located at the same address as the restaurant.

- 5 -

29.     Upon information and belief, Defendants Sun Mi Chi and Kyung H. Song possess or possessed operational control over Defendant Corporation, Possess or possessed an ownership interest in Defendant Corporation and control or controlled significant functions of Defendant Corporation.

30.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.     Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs and all similarly situated individuals referred to herein.

32.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and were their (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

33.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

34.     Upon information and belief, Individual Defendants Sun Mi Chi and Kyung H. Song operate Defendant Corporation as either an alter ego of themselves, and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves by, among other things:

    a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

- 6 -

b.  defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

c.  transferring assets and debts freely between all Defendants;

d.  operating Defendant Corporation for their own benefit as sole or majority shareholders;

e.  operating Defendant Corporation for their own benefit and maintaining control over it as a closed corporation or closely held controlled entity;

f.  intermingling assets and debts of their own with Defendant Corporation; and

g.  other actions evincing a failure to adhere to the corporate form.

35.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment and determined the rate and method of any compensation in exchange for their services.

36.     In each year from 2015 to 2016, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used in the restaurant on a daily basis, such as olive oil and meat, were produced outside of the State of New York.

*Plaintiffs*

38.     Plaintiffs were former employees of Defendants, primarily employed in

- 7 -

performing the duties of cashiers, general assistants, porters and cooks.

39.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C.216(b)

### Plaintiff Miriam Mendez

40.     Ms. Mendez was employed by Defendants from approximately July 2015 until on or about April 28, 2016.

41.     At all times relevant to this Complaint, Ms. Mendez was employed by Defendants as a cashier, porter, and general assistant.

42.     Ms. Mendez's work duties required neither discretion nor independent judgment.

43.     Ms. Mendez regularly handled goods in interstate commerce, such as produce, olive oil, meat and other supplies produced outside of the State of New York.

44.     Throughout her employment with Defendants, Ms. Mendez regularly worked in excess of 40 hours per week.

45.     For the last week of July 2015, Plaintiff Mendez worked from approximately 8:00 a.m. until on or about 4:00 p.m. Monday through Friday (typically 40 hours per week).

46.     From approximately August 2015 until on or about January 2016, Ms. Mendez worked from approximately 8:00 a.m. until on or about 6:30 p.m. three days a week, from approximately 6:00 a.m. until on or about 4:30 p.m. two days a week and from approximately 6:00 a.m. until on or about 6:00 p.m. on Saturdays (typically 64.5 hours per week).

47.     From approximately January 2016 until on or about April 28, 2016, Ms. Mendez worked from approximately 8:00 a.m. until on or about 6:30 p.m. three days a week and from approximately 6:00 a.m. until on or about 4:30 p.m. two days a week (typically 52.5 hours per week).

48.     Throughout her employment with Defendants, Ms. Mendez was paid her wages by check.

49.     Defendants did not pay Plaintiff any wages for the last week of July 2015.

50.     From approximately August 2015 until on or about April 28, 2016, Defendants paid Plaintiff Mendez $10.00 per hour.

51.     However, Defendants paid Plaintiff Mendez much less than what they owed her each week.

52.     For example, Defendants only paid Plaintiff Mendez $200.00 per week in which she had worked 60 hours.

53.     In addition, Plaintiff Mendez's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

54.     For example, Defendants required Plaintiff Mendez to work and additional 15 to 30 minutes past her scheduled departure time every day and did not pay her any additional compensation for the extra time they required her to work.

55.     Defendants never granted Plaintiff Mendez a break or meal period of any length.

56.     However, Defendants falsely deducted several hours as meal break from Plaintiff Mendez's paycheck.

57.     Although Plaintiff Mendez was required to keep track of her time, Defendants required her to enter false start and stop times, to avoid having to pay her for all the hours she worked.

58.     For example, Defendants would not allow Plaintiff Mendez to punch in or out on Saturdays when she worked from approximately 6:00 a.m. until on or about 6:00 p.m.

59.     Defendants did not provide Plaintiff Mendez with an accurate statement of wages

with each payment of wages, as required by NYLL 195(3).

60.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendez regarding overtime and wages under the FLSA and NYLL.

61.     Defendants never provided any notice to Plaintiff Mendez in English and in Spanish (Plaintiff Mendez's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Carolina Lizbeth Gavilanes Cortaza*

62.     Ms. Gavilanes was employed by Defendants from approximately August 24, 2015 until on or about April 24, 2016.

63.     At all times relevant to her Complaint, Ms. Gavilanes was an employee of Defendants employed to work as a cashier, general assistant, and cleaner.

64.     Ms. Gavilanes' work duties required neither discretion nor independent judgment.

65.     Ms. Gavilanes regularly handled goods in interstate commerce, such as produce, olive oil, fish and other supplies produced outside of the State of New York.

66.     From approximately August 2015 until on or about September 2015, Ms. Gavilanes worked from approximately 6:00 a.m. until on or about 2:00 or 3:00 p.m. Mondays through Fridays, (typically 40 to 45 hours per week).

67.     From approximately September 2015 until on or about December 31, 2015, Ms. Gavilanes worked from approximately 6:00 a.m. until on or about 3:00 or 4:00 p.m. Mondays, Tuesdays and Wednesdays and from approximately 9:00 a.m. until on or about 6:00 p.m. or 7:00 p.m. Thursdays and Fridays (typically 45 to 50 hours per week).

68.     From approximately January 2016 until on or about February 28, 2016, Ms. Gavilanes worked from approximately 6:55 a.m. until on or about 3:00 p.m. Mondays, Tuesdays and Wednesdays and from approximately 8:55 a.m. until on or about 5:00 p.m. Thursdays and Fridays; in addition, Plaintiff Gavilanes worked a Sunday in January and a Saturday in February (typically 40.5 to 48.5 hours per week).

69.     From approximately March 2016 until on or about April 24, 2016, Ms. Gavilanes worked from approximately 9:00 a.m. until on or about 2:00 p.m. Mondays, Tuesdays and Wednesdays and from approximately 6:00 a.m. until on or about 1:00 p.m. Thursdays and Fridays (typically 29 hours per week).

70.     From approximately August 2015 until on or about December 31, 2015, Plaintiff Gavilanes was paid her wages in cash.

71.     From approximately January 2016 until on or about April 24, 2016, Plaintiff Gavilanes was paid her wages in a combination of check and cash.

72.     From approximately August 2015 until on or about September 2015, Defendants paid Plaintiff Gavilanes a fixed salary of $350 per week.

73.     From approximately September 2015 until on or about December 31, 2015, Defendants paid Plaintiff Gavilanes a fixed salary of $400 per week.

74.     From approximately January 1, 2016 until on or about February 28, 2016, Defendants paid Plaintiff Gavilanes a fixed salary of $330 per week ($164 by check and $156 in cash.

75.     From approximately March 1, 2016 until on or about April 24, 2016, Defendants paid Plaintiff Gavilanes a fixed salary of $200 per week ($174 by check and $26 in cash).

76.     However, Defendants did not pay Plaintiff Gavilanes her wages for the last three days she worked for them.

77.     Furthermore, Defendants never reimbursed Ms. Gavilanes for the penalties her bank imposed on her because of Defendants' paychecks constantly bouncing.

78.     In addition, Defendants deducted $50 from Ms. Gavilanes' weekly paycheck claiming it was for the food she ate for lunch.

79.     Plaintiff Gavilanes' pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

80.     For example, from approximately August 2015 until on or about December 31, 2015, Defendants regularly required Plaintiff Gavilanes to work and additional hour past her scheduled departure time and did not pay her any additional compensation for the extra time they required her to work.

81.     Similarly, from approximately January 2016 until on or about February 28, 2016, Defendants required Plaintiff Gavilanes to start working 5 minutes prior to her start time and did not compensate her for the additional time they required her to work by not allowing her to punch in until the regular start time.

82.     From approximately September 2015 until on or about December 31, 2015, Defendants did not grant Ms. Gavilanes a meal break or rest period of any length.

83.     Although from approximately August 2015 until on or about September 2015 and from approximately January 2016 until on or about April 24, 2016, Defendants granted Plaintiff Gavilanes  a 15 to 30 minute meal period, it was constantly interrupted and she had to eat while working.

84.     Plaintiff Gavilanes was never notified by Defendants that her tips were being included as an offset for wages.

85.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gavilanes' wages.

86.     Although Plaintiff Gavilanes was required to keep track of her time, Defendants did not allow her to punch in at the time she began working from approximately January 2016 until on or about February 28, 2016.

87.     Defendants did not provide Plaintiff Gavilanes an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

88.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gavilanes regarding overtime and wages under the FLSA and NYLL.

89.     Defendants did not provide any notice to Plaintiff Gavilanes in English and in Spanish (Plaintiff Gavilanes' primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Marco Cruz*

90.     Mr. Cruz was employed by Defendants from approximately August 2012 until on or about July 10, 2015.

91.     At all times relevant to this Complaint, Mr. Cruz was an employee of Defendants employed to work as a food preparer.

92.     Mr. Cruz's work duties required neither discretion nor independent judgment.

93.     Mr. Cruz regularly handled goods in interstate commerce, such as cheese and other supplies produced outside of the State of New York.

94.     Throughout his employment with Defendants, Mr. Cruz regularly worked in excess of 40 hours per week.

95.     From approximately August 2012 until on or about July 10, 2015, Mr. Cruz worked from approximately 6:00 a.m. until on or about 4:00 p.m. Mondays to Fridays, from approximately 6:00 a.m. until on or about 6:00 p.m. on Saturdays, and if other employees called out sick, Plaintiff Cruz was required to work from approximately 8:00 a.m. until on or about 6:00 p.m. on Sundays (typically 62 to 72 hours per week).

96.     Throughout his employment with Defendants, Plaintiff Cruz was paid his wages in cash.

97.     Throughout his entire employment with Defendants, Plaintiff Cruz was paid a fixed salary of $660.00 per week.

98.     Defendants did not provide Plaintiff Cruz an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

99.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cruz regarding overtime and wages under the FLSA and NYLL.

100.     Defendants did not provide any notice to Plaintiff Cruz in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

101.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs, and all similarly situated employees, to work in excess of forty (40) hours per week without paying them appropriate minimum wage, overtime compensation and "spread of hours" pay, as required by federal and state laws.

- 14 -

102.    Plaintiffs were victims of Defendants' common policy and practices which violated their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

103.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

104.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

105.    Plaintiffs were paid their wages in cash or in a combination of check and cash.

106.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

107.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

108.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

109.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former restaurant workers.

110. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

111. Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

112. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

113. Plaintiffs' experience is representative of all those who were similarly situated, who have worked for the Defendants, who were paid in cash and never received any document or statement that stated the rate of pay or actual number of hours worked.

- 16 -

## FLSA COLLECTIVE ACTION CLAIMS

114.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), *i.e.*, persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period").

115.    At all relevant times, Plaintiffs were similarly situated to other members of the FLSA Class in that they had substantially similar job requirements and pay provisions and were subject to Defendants' common practices, policies, programs, procedures, protocols and plans, including willfully failing and refusing to pay them the required minimum wage and overtime, and willfully failing to keep records required by the FLSA.

116.    The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS

117.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

118.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

119.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

120.   Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

121.   Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

122.   Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

123.   Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

124.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

125.   Defendants, in violation of the FLSA, failed to pay Plaintiffs and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

126.   Defendants' failure to pay Plaintiffs and the FLSA Class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

127.   Plaintiffs and the FLSA class members have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK LABOR LAW)

128.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

129.   Defendants, in violation of NYLL Art. 19 and 12 N.Y.C.R.R. § 142-2.2, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

130.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of NYLL § 663.

131.   Plaintiffs have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE NEW YORK MINIMUM WAGE RATE)**

132.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

133.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

134.   Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA Class members) less than the minimum wage.

135.   Defendants' failure to pay Plaintiffs (and the FLSA Class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

136.   Plaintiffs (and the FLSA Class Members) were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR)**

137.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138. Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Plaintiffs' spread of hours exceeded ten hours, in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. § 146-1.6(a).

139. Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

140. Plaintiffs have been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

141. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

142. Defendants failed to provide Plaintiffs with a written notice, in English and in each Plaintiffs' primary language, of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

143. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorney's fees.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW

144. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

145. Defendants did not provide Plaintiffs with a statement of wages with each payment of wages, as required by NYLL 195(3).

146. Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs' (including the prospective collective class members);

(f)     Awarding Plaintiffs' (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs' (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

- 21 -

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs' damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs' damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

- 22 -

(q)     Awarding Plaintiffs (including the prospective collective class members) the

expenses incurred in this action, including costs and attorney's fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.


Dated: New York, New York
       July 12, 2016

                                        MICHAEL FAILLACE & ASSOCIATES, P.C.


                               By:     /s/ Michael Faillace_____
                                       Michael Faillace, Esq.
                                       60 East 42nd Street, Suite 2540
                                       New York, New York 10165
                                       Telephone: (212) 317-1200
                                       Facsimile: (212) 317-1620
                                       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 2, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Miriam Mendez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           02 de junio de 2016

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

June 2, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                    Carolina Lisbeth Gavilanes Cortaza

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:                Carolina Gavilanes

Date / Fecha:                     02 de junio de 2016

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

July 7, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Marco Cruz_____

Legal Representative / Abogado:    Michael Faillace & Associates, P.C._____

Signature / Firma:                _____

Date / Fecha:                     _____07 de julio de 2016_____

_Certified as a minority-owned business in the State of New York_